[Civ. No. 40626. Second Dist., Div. Four. June 20, 1973.]

LOS ANGELES COUNTY EMPLOYEES ASSOCIATION, LOCAL 660, et al., Plaintiffs and Respondents, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

**2**

## COUNSEL

John D. Maharg and John H. Larson, County Counsel, Larry A. Curtis, Daniel C. Cassidy and Michael H. Dougherty, Deputy County Counsel, for Defendants and Appellants.

Evelle J. Younger, Attorney General, and Alan Hager, Deputy Attorney General, as Amici Curiae on behalf of Defendants and Appellants.

Geffner & Satzman, Leo Geffner and Michael L. Posner for Plaintiffs and Respondents.

## OPINION

**JEFFERSON, J.**—Petitioners, Local 660 of the Los Angeles County Employees Association and Local 535 of the Social Workers Union, sought a peremptory writ of mandate ordering the defendant County of Los Angeles and two of its departments, the department of public social services (DPSS) and the department of personnel, to undertake certain negotiations with the petitioners. The trial court granted the writ, and the defendants have appealed.

The factual and legal background of the dispute is: In 1968, the Los Angeles County Board of Supervisors passed Ordinance No. 9646, entitled the Employee Relations Ordinance.[1]

The county ordinance contains a comprehensive scheme for the handling of labor disputes between county management and county employees. It provides for the certification of employee representatives for the purpose of conducting negotiations with management representatives of the county. In section 3(o), the negotiation process is defined as the "performance by duly authorized management representatives and duly authorized representatives of a certified employee organization of their mutual obligation to meet at reasonable times and to confer in good faith *with respect to wages, hours, and other terms and conditions of employment. . . .*" (Italics added.) Section 7 provides for the creation of an employee relations commission to administer and implement the ordinance.[2]

---

[1] It was passed pursuant to the Meyers-Milias-Brown Act, enacted by the state Legislature to provide "a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (Gov. Code, § 3500.) The law empowers local governing bodies to formulate rules and regulations for the handling of labor disputes with public employees (Gov. Code, § 3507). It provides for the certification of representatives of public employees, and mandates that "[t]he governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, *shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment* with representatives of such recognized employee organizations. . . ." (Italics added.) (Gov. Code, § 3505.)

[2] The ordinance gives the commission, composed of three members, the responsibility for supervision of certification procedures, the power to make suitable rules and regulations, and to conduct hearings concerning labor disputes under oath, to compel attendance therein, and to issue decisions. Section 7(g)(5) requires the commission "To investigate charges of unfair employee relations practices or violations of this Ordinance, and to take such action as the Commission deems necessary to effectuate the policies of this Ordinance, including, but not limited to, the issuance of cease and desist orders."

Section 12 of the ordinance specifically enumerates certain practices by county management to be "unfair employee relations practices," including: "(a) It shall be an unfair employee relations practice for the County: . . . (3) To refuse to negotiate with representatives of certified employee organizations on negotiable matters." The ordinance does not specifically enumerate what matters are "negotiable" and what matters are not.

On December 3, 1970, the petitioner unions, having been duly certified as the majority representatives of social workers employed by the county to determine the eligibility of public assistance applicants, filed charges with the commission alleging that the county management representatives had refused to negotiate with the unions since May 14, 1970, concerning the size of the caseloads carried by eligibility workers. The petitioners further alleged that the refusal to negotiate constituted an unfair employee relations practice on the part of the county as defined in section 12(a)(3). Hearings were held before the commission. The county maintained that the size of caseloads was not a "negotiable" matter; the unions contended that negotiation was mandatory as the issue related to "wages, hours, and other terms and conditions of employment."[3] On June 25, 1971, the commission rendered its decision that the county's refusal to negotiate with the unions was a violation of section 12, and ordered the county to "cease and desist" from such refusal. The county continued to refuse, and the petitioners then sought and obtained the peremptory writ directing that the commission's order be enforced.[4]

The basic issue before us is whether the size of caseloads assigned to eligibility workers at the DPSS constitutes an item within the mandatory section of the Meyers-Milias-Brown Act (Gov. Code, § 3505) which requires negotiation by public employers of issues relating to "wages, hours, and other terms and conditions of employment," or within the applicable provisions of the local ordinance (which shall be set forth *infra.*)

The county contends that the mandatory negotiation provision of section 3505 must be read in conjunction with Government Code section 3504,

---

[3]The duty to negotiate refers only to the necessity of meeting and conferring in good faith. There is no compulsion for either side to agree. (Section 12(o). See *East Bay Mun. Employees Union* v. *County of Alameda,* 3 Cal.App.3d 578, 584 [83 Cal. Rptr. 503].)

[4]Section 12(e) provides that "If the Commission's decision is that the County has engaged in an unfair employee relations practice or has otherwise violated this Ordinance or any rule or regulation issued thereunder, the Commission shall direct the County to take appropriate corrective action. If compliance with the Commission's decision is not obtained within the time specified by the Commission, it shall so notify the other party, which may then resort to its legal remedies."

which, the county argues, limits the application of section 3505. Section 3504 provides: "The scope of representation [allowed to the representatives of ·public employees] shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, *except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order.* [Added by Stats. 1961, ch. 1964, § 1; amended by Stats. 1968, ch. 1390, § 4, operative Jan. 1, 1969.]" Since the determination of the eligibility for public assistance is a service to the public for which the county is responsible pursuant to the Welfare and Institutions Code (§§ 11050-11062), it is argued, "the scope of representation" exception applies to the size of caseloads.

■ We do not think section 3504 limits section 3505 in this manner. The problem of interpreting these sections, and their relationship to each other, is that an argument can plausibly be made that *all* management decisions affect areas of mandatory service to the public *and* the working conditions of public employees; or, conversely, that all decisions rendered concerning a public employee labor dispute of necessity will determine the quality of mandated public service *and* the operation of management.

Section 3505 requires the governing body of the public agency, or its representatives, to "meet and confer in good faith regarding wages, hours, and other terms and conditions of employment . . . ." There is no reason why the public agency cannot discuss those aspects of the caseload problem, even though the "merits, necessity, or organization" of the service must be outside the scope of the required discussion. Whether such limited discussion is likely to be fruitful is nothing the public agency should prejudge.

■ Turning to the local ordinance, its provisions concerning negotiation contain the same general approach of the state legislation. The pertinent parts of the ordinance are sections 5 and 6. Section 5: "It is the exclusive right of the County to determine the mission of each of its ₀ . . . departments . . . set standards of services to be offered to the public, and exercise control and discretion over its organization and operations . . . to direct its employees . . . determine the methods, means and personnel by which the County's operations are to be conducted; *provided,* however, that the exercise of such rights does not preclude employees . . . from conferring or raising grievances about the practical consequences that decisions on these matters may have on wages, hours, and other terms and conditions of employment." (Italics added.)

Section 6:

"(b) The scope of negotiation between management representatives and the representatives of certified employee organizations includes wages, hours, and other terms and conditions of employment within the employee representation unit.

"(c) Negotiation shall not be required on any subject preempted by Federal or State law, or by County charter, nor shall negotiation be required on Employee or Employer Rights as defined in Sections 4 and 5 above. Proposed amendments to this Ordinance are excluded from the scope of negotiation."[5]

The defendant contends that section 6(c) prohibits negotiation concerning the management rights of the county as set forth in section 5, and that the outright prohibition governs "the scope of negotiation" described in section 6(b).

In determining the intent of the board of supervisors who enacted the local ordinance, it is instructive to refer to the report prepared by the committee appointed by the board to draft the local ordinance. The report was adopted as an accurate statement of the board's legislative intent as of September 3, 1968. The report contains a discussion of the nonadvisability of enumerating areas of mandatory negotiation: "County officials have urged us to go further and to include in the recommended ordinance examples of the kinds of subjects on which negotiation is not mandatory. The difficulty we have with this approach is that topics proposed for negotiation, like words in a sentence, take on color and meaning from their surrounding context. Viewed in the abstract, the demand to negotiate over 'the level of service to be provided,' for example, would seem to be a matter covered by Section 5 and therefore not negotiable except at the discretion of the County, as provided in Section 6(d). In the context of a specific situation, however, a demand for a lower maximum case load for social workers, for example, although theoretically related to the level of service to be provided, might be much more directly related to terms and conditions of employment."[6]

The ordinance commits the county to negotiate wages, hours and conditions of employment, though affirming the exclusive right of the county

---

[5]Section 4 enjoins interference with the rights of public employees to participate or not in employee organizations.

[6]An Employee Relations Ordinance for Los Angeles County, Report and Recommendations of the Consultant's Committee, July 25, 1968.

to make certain management decisions. The county does not give up these management powers when it engages in the negotiations which are required by the ordinance. Granted that the subjects are interrelated, it is both possible and proper for the county to enter into discussions and receive the viewpoint of the employee representatives on those aspects of the problem which are covered by the promise to negotiate.

The defendant county further contends that the decision of the employee relations commission and the subsequent order to the county to "cease and desist" from the refusal to negotiate did not create a duty on the part of the county that is enforceable by mandate. We are referred to the "report of intention" adopted by the board of supervisors, relative to the discussion of "cease and desist" orders: "Although it is to be hoped that the Commission's findings and orders in unfair employee practice cases will be respected by all parties involved, it is necessary to comment briefly on the remedies that would be available to the injured party in the event that the other party refused to abide by the Commission's order. Because of the very nature of public employment, complete mutuality of remedy would not be possible in this situation. The Commission would lack authority to compel the County to obey its orders, although it would presumably advise the Board of Supervisors of any refusal by a County agency to comply. Thus, ultimately, the issue would become whether the Board of Supervisors intended to support the Commission. Refusal by the Board to do so would, of course, endanger the continued existence of the Commission."

Section 12(e) indicates rather clearly that while the commission was not given the power to enforce its decisions, it was foreseen that a party bringing charges before that body might have to resort to "legal remedies" to obtain enforcement of a decision made. "Legal remedies" include mandamus in the proper case.

The county argues that to enforce the commission's order deprives the board of supervisors of its exclusive responsibility to exercise its discretionary governmental powers.

The judgment of the superior court does no more than to require the county to negotiate in good faith in an effort to reach an agreement, "and in the event that an agreement is reached, that it be reduced to writing and signed by petitioners and respondents." Thus, there is no requirement that the board of supervisors give up any of its powers, or that the board or its representatives agree to anything. It is, of course, true that any discussion of "working conditions" impinges upon matters which are within

the exclusive jurisdiction of the board of supervisors, and as to which it would be improper for the county to make binding agreement with an employee organization. But this inevitable interrelationship need not preclude negotiation as to any aspect of the caseload problem as to which the county and the employees might be able to agree without invading the subjects upon which the county is not required to negotiate.

The word "negotiation" is a term of art, specially defined in section 3(o) of Employee Relations Ordinance, and is limited to the subjects of "wages, hours, and other terms and conditions of employment." The judgment of the superior court, requiring the county to negotiate, goes no farther than to require what the ordinance promised. Section 3(o) also states "This obligation does not compel either party to agree to a proposal or to make a concession." This saving clause relieves the county of any danger that by entering into a negotiation on "working conditions," it will be swept into an agreement covering matters upon which it is not obliged to negotiate.

■ While mandamus will not lie to compel governmental officials to exercise their discretionary powers in a particular manner, it will lie to compel them to exercise them in some manner. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 75, 76, pp. 3851, 3852.) ■ In the instant case, mandamus is a proper method of compelling governmental officials to comply with both state and local law requiring them to negotiate on a particular subject, although the compulsion does not, of course, extend to requiring them to reach a specified result pursuant to such negotiation. The duty to negotiate is not, by itself, a discretionary act under these circumstances. Negotiation does not mean agreement; neither the state law nor the local ordinance equates negotiation with compulsory collective bargaining. (*East Bay Mun. Employees Union* v. *County of Alameda*, cited *supra*; see *Sacramento County Employees Organization, Local 22 etc. Union* v. *County of Sacramento*, 28 Cal.App.3d 424 [104 Cal.Rptr. 619].)

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 16, 1973. Clark, J., was of the opinion that the petition should be granted.