469 A.2d 150.

**JOINT BARGAINING COMMITTEE OF the PENNSYLVANIA SOCIAL SERVICES UNION and Pennsylvania Employment Security Employees' Association, Affiliates of Service Employees International Union, AFL–CIO, Appellant,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellee,**

**and**

**Commonwealth of Pennsylvania, Intervenor.**

Supreme. Court of Pennsylvania.

Argued Oct. 25, 1983.

Decided Dec. 29, 1983.

238

---

Bruce M. Ludwig, Philadelphia, for appellant.

James L. Crawford, Chief Counsel, Frayda Kamber, Robert J. Schwartz, Asst. Counsel, Harrisburg, for appellee.

Alaine S. Williams, Stuart Davidson, Philadelphia, for amicus, AFSCME.

Elliot A. Strokoff, Jerome Gerber, Harrisburg, for amicus, Pa. AFL–CIO.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-
TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

McDERMOTT, Justice.

This appeal seeks to end ten years of litigation which
originally arose when the Commonwealth refused to bar-
gain with a duly authorized bargaining unit representing
the Commonwealth's social service employees [1] about the
issue of employee caseload.[2]

An unfair labor practices charge was lodged by the union
pursuant to the Pennsylvania Employe Relations Act
(PERA) [3] on February 22, 1973, charging that the Common-
wealth refused to bargain in good faith under PERA, 43
P.S. § 1101.1201(a)(1) and (a)(5). The Commonwealth insist-
ed that the issue was not a matter subject to bargaining
under section 701 of PERA [4] but was a matter of "inherent

1. The employees represented by the Union include assistant techni-
cians, caseworkers, therapeutic activities worker-recreational and psy-
chological associates.

2. For the purposes of this appeal, the issue of "caseload" (also referred
to as "workload"), pertains to managerial discretion over the assign-
ment of the number of cases Commonwealth social services employ-
ees would be required to handle. The appellants state that their
concern is over "the quantum of work required by a particular
configuration of case assignments." (Appellant's Brief at 8, fn. 2.)
Since the concern of the appellant is with assignment of cases to
social services employees, it is not necessary here to address their
assignment of error to the Commonwealth Court in saying that the
union only represents professional employees. The workload of em-
ployees who do not handle cases is not at issue here.

3. Act of July 23, 1970, P.L. 563, No. 195, art. I, §§ 101 et seq.
Pa.Stat.Ann. tit. 43, §§ 1101.101 et seq.

4. 43 P.S. § 1101.701 provides:
    Collective bargaining is the performance of the mutual obligation
    of the public employer and the representative of the public em-
    ployes to meet at reasonable times and confer in good faith with
    respect to wages, hours and other terms and conditions of employ-
    ment, or the negotiation of an agreement or any question arising
    thereunder and the execution of a written contract incorporating
    any agreement reached but such obligation does not compel either
    party to agree to a proposal or require the making of a concession.

managerial policy" under section 702.[5] Pursuant to section 702, the Commonwealth offered to "meet and discuss" the issue.

Following a hearing, the Pennsylvania Labor Relations Board (hereinafter "Board") agreed with the Commonwealth that caseload was a matter of inherent managerial policy, and that the Commonwealth complied with its statutory duty in offering to meet and discuss. Consequently, the Board decided that refusing to bargain over a managerial prerogative such as caseload was not an unfair labor practice.

■ The Board's decision was affirmed by the Commonwealth Court in *Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board*, 15 Pa.Cmwlth. 441, 325 A.2d 659 (1974). However, this Court, in a *per curiam* decision, 474 Pa. 168, 377 A.2d 1267, vacated the decisions of the Board and the Commonwealth Court and remanded in light of our decision in *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975). Another hearing was held and, initially, in a NISI Decision and Order, the Board found caseload to be a subject for mandatory collective bargaining and that the Commonwealth committed an unfair labor practice in refusing to bargain. The Commonwealth filed exceptions and the Board reversed itself pursuant to Board rules.[6] 34 Pa.Code § 95.98(f). The Board found again that there was

5. 43 P.S. § 1101.702 reads:

Public employers shall not be required to bargain over matters of *inherent managerial policy,* which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. *Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.* (Emphasis supplied.)

6. The appellant also argues that the Board acted unreasonably in reversing its NISI decision. We do not agree. The Board's final order was thorough and well thought out, stating compelling reasons for its change of heart.

no unfair labor practice. The Commonwealth Court affirmed the Board's decision. *Joint Bargaining Committee of Pennsylvania Social Services Union v. Commonwealth, Pennsylvania Labor Relations Board,* 68 Pa. Cmwlth. 307, 449 A.2d 96 (1982).

Our scope of review is limited. A decision of the Board must be upheld if the Board's findings are supported by substantial evidence, and if the conclusions drawn from those facts are reasonable, and not capricious, arbitrary or illegal. 43 P.S. § 1101.1501; *Commonwealth of Pennsylvania v. Pennsylvania Labor Relations Board,* 502 Pa. 7, 11–12, 463 A.2d 409, 411, (1983); *St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 104, 373 A.2d 1069, 1071 (1977); *In re Appeal of Cumberland Valley School District,* 483 Pa. 134, 139, 394 A.2d 946, 949 (1978). This Court "will not lightly substitute its judgment for that of a body selected for its expertise whose experience and expertise make it better qualified than a court of law to weigh facts within its field." *Pennsylvania Labor Relations Board v. Butz,* 411 Pa. 360, 377, 192 A.2d 707, 716 (1963); *Appeal of Cumberland Valley School District, supra.,* 483 Pa. at 140, 394 A.2d at 949. *See also, Pennsylvania Labor Relations Board v. Mars Area School District,* 480 Pa. 295, 389 A.2d 1073 (1978), where we deferred to the Board's expertise and reinstated the final decision of the Board, holding that the decision to terminate teacher aides and replace them with volunteers was not inherent managerial policy and thus mandatorily bargainable.

Thus, the issue here is whether there was substantial evidence on the record to support the Board's conclusion that assignment of caseload was a managerial prerogative, and/or whether the Board erred as a matter of law in making its conclusion.

The starting point in our review of this case is *Pennsylvania Labor Relations Board v. State College Area School District, supra.,* which dealt with the relationship between sections 701 and 702 of PERA. Section 701 requires good faith bargaining on issues pertaining to "wag-

es, hours and other terms and conditions of employment." While section 701 is restricted to these three items, the latter phrase—"terms and conditions"—is a broad one, since almost any matter confronting employees in the workplace can be viewed as affecting a term or condition of employment.

Meanwhile, section 702 gives public employers the license to refuse to bargain over matters of "inherent managerial policy," otherwise known as management prerogatives. The provision supplies an expansive definition of what constitutes "inherent managerial policy," including but not "limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel." Again, almost anything touching on managerial discretion could be regarded as "inherent managerial policy," and therefore beyond the sphere of mandatory bargaining. Without a proper balance, the two sections might negate each other, a result which the legislature surely did not intend in passing PERA.

In resolving this conflict, the Court noted that prior to PERA, public employees were barred from striking and public employers were not required to engage in collective bargaining. PERA sought to correct what the legislature perceived as an "intolerable situation" by giving public employees the right to bargain collectively, tempered by the public sector's right and responsibility to manage the government, preserve public funds and protect the overall public interest. *State College, Id.* 461 Pa. at 502–503, 337 A.2d at 267–68. The Court then announced the following balancing test:

[W]here an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch upon basic policy. It is the duty of the Board in the first instance and the

courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole. If it is determined that the matter is one of inherent managerial policy but does affect wages, hours and terms and conditions of employment, the public employer shall be required to meet and discuss such subjects upon request by the public employe's representative pursuant to section 702.

461 Pa. at 507, 337 A.2d at 268.

Other jurisdictions have gone both ways on the substantive issue of whether workload or caseload is mandatorily bargainable. One case, for example, citing our *State College* balancing test, held that the workload of instructors, counselors and librarians in a community college system was the prerogative of management and thus not bargainable. *Metropolitan Technical Community College Education Association v. Metropolitan Technical Community College Area*, 203 Neb. 832, 281 N.W.2d 201, 206 (1979). The court found that the issue struck at the heart of the policy of the system as a whole, outweighing the recognized impact on working conditions. *Contra, Byram Township Board of Education v. Byram Township Education Association*, 152 N.J.Super. 12, 377 A.2d 745 (1977).

In this case, the Board, applying the *State College* balancing test, found that caseload is inherently managerial policy. While recognizing that the issue of caseload impacts on an employee's interest in hours and terms and conditions of employment, they concluded that administrative control over caseload, unconstrained by a term in a collective bargaining agreement, has a more compelling impact on the Commonwealth's social welfare system as a whole.

This conclusion is amply supported by evidence in the record. Each person walking into the door of a Commonwealth social welfare agency presents a different situation, requiring varying degrees of time and effort. The flow of cases into the system varies greatly as well, from time to time, from county to county, influenced by ever changing

and unpredictable social and economic trends. A catastrophe like a flood or fire, for example, in a particular area could mean a sudden surge in cases. Administrative constraints placed on the Commonwealth's social welfare apparatus by the legislature and the federal government, increasing paper work and time spent per case, alters the responsibility of administrators. Factors such as these compel a conclusion that the Commonwealth requires flexibility in assigning and shifting caseload within an agency, affecting organizational structure, standards of services to be rendered, control of the overall budget and selection and direction of personnel. As the Board concluded in its order:

> Cases are generated from society to a governmental agency without a significant amount of control on the part of the public employer as to the cases which will constitute the workload of a given agency. The only means by which a public employer may adjust a social services workload are means which impact heavily on management prerogatives.

Board Final Order at 2.

Based on the record, we agree with the Board that control over caseload is not a matter which simply touches "upon basic policy," but is "directly determinative of policy particularly in the reserved areas of standards of service and selection and direction of personnel." Board Final Order at 6.

■ We do not hold in this case that caseload is always a managerial prerogative. In some factual settings caseload might indeed be a mandatory subject of bargaining, as the impact of unbridled discretion over caseload assignment on an employee's interest in wages, hours and terms and conditions of employment might outweigh the impact on the basic policy of the system as a whole.[7]

■ We hold merely that there was substantial evidence on the record as a whole to support the Board's conclusion

7. Moreover, as the Board concluded, the impact of additional caseload itself on wages, hours and working conditions conceivably would be mandatorily bargainable. Board Final Order at 8. Further, an individual employee confronted with an oppressive caseload would have

that discretion over the assignment of caseload in the Commonwealth's social service system had a vital impact on the policy of the system so to outweigh the employee's interest in the issue, as affecting wages, hours and terms and conditions of employment; that the Commonwealth was not guilty of an unfair labor practice in refusing to bargain about the issue; and that the Commonwealth fulfilled its duty under PERA by offering to meet and discuss the issue with the union. The order of the Commonwealth Court, affirming the Board's decision, is affirmed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent and would reverse the Commonwealth Court's affirmance of the Pennsylvania Labor Relation Board's *ruling of law* that caseload of the bargaining unit employees is a matter of "inherent managerial policy" and that worker caseload is not a subject of mandatory collective bargaining under Section 701 of the Public Employe Relations Act, (PERA) 43 P.S. § 1101.701.

In reaching its decision, the majority exhibits a degree of deference to the Board's determination of a matter of law that is not justified by statute or precedent. This exaggerated deference stems from the jumbling together of the appropriate standard of appellate review of Board *findings of fact* with the standard of review of the Board's *conclusions of law.* The majority incorrectly states "the issue here is whether there was *substantial evidence* on the record *to support the Board's conclusion* that assignment of caseload was a managerial prerogative, and/or whether the Board erred as a matter of law in making its conclusion." Majority op. at 241 (emphasis added). The majority then goes on to

> hold merely that there was *substantial evidence* on the record as a whole *to support the Board's conclusion* that discretion over the assignment of caseload in the

the remedy of arbitration of a grievance pursuant to PERA. See 43 P.S. § 1101.903.

Commonwealth's social service system had a vital impact on the policy of the system so to outweigh the employee's interest in the issue, as affecting wages, hours and terms and conditions of employment....

At 244–45 (emphasis added).[1]

This is obviously a misstatement of the appropriate standard of appellate review of the Board's rulings of law. The correct statement of this standard is "whether the findings of the Board are supported by 'substantial evidence', and 'whether the conclusions drawn from those facts are reasonable and not capricious, arbitrary, or illegal.' " *St. Joseph's Hospital v. Pennsylvania Labor Relations Board (PLRB)*, 473 Pa. 101, 104, 373 A.2d 1069, 1071 (1977) (citations omitted). While the majority *initially* recognizes this correct standard of appellate review, at 241, the subsequent language utilized indicates clearly that the majority has reviewed the conclusions of law as if they were findings of fact and, finding substantial evidence to support the conclusions, has deferred to the Board's "expertise".

There is certainly a need to defer to the Board's expertise regarding its *factual* determinations, and, accordingly, we are bound by the Board's *fact findings* and reasonable *factual inferences* where substantial, credible evidence supports such findings and inferences. *See St. Joseph's Hospital v. PLRB, supra and PLRB v. Mars Area School District*, 480 Pa. 295, 389 A.2d 1073 (1978). However, it is neither desirable, wise nor permissible to so restrict our review of Board *determinations of matters of law* and this Court would abdicate its responsibility to interpret the laws of this Commonwealth were we to affirm an agency's *conclusion of law* merely because there was "substantial evidence" to support it. The deference given to an agency's factual determination is totally out of place in the context of appellate review of conclusions of law. Where an error has been committed by the Board in its application of the law to the facts which it has found (and which are supported by substantial evidence), then the conclusions erroneously

1. The majority also states that the Board's *"conclusion* is amply *supported by evidence* in the record." At 243.

drawn by the Board are not "reasonable", and perhaps, in a given case, are "capricious, arbitrary or illegal." Where such an error of law has occurred, an appellate court is *obligated* to correct that error by reversing or modifying the Board's order.

There is no doubt that the determination of whether an item is a mandatory subject of collective bargaining under Section 701 or a "meet and discuss" item under Section 702 is a question of law. In *PLRB v. State College Area School District*, 461 Pa. 494, 507, 337 A.2d 262 (1975), this Court stated:

> [W]e hold that where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch upon basic policy. *It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.* (emphasis added).

While this balancing test does not purport to establish bright lines, it is apparent that the more directly an item affects an individual employee's "wages, hours and other terms and conditions of employment," the more likely that item will be determined to be a legitimate subject of mandatory collective bargaining.[2] In my opinion, it is difficult to conceive of a subject matter more directly related to "hours" of employment than employee caseload or workload. As appellants state in their brief at 8, n. 2:

> As used in the context of these proceedings, the concept of "workload" includes both the number of cases

**2.** "The key, as we see it, is how direct the impact of an issue is on the well-being of the individual teacher, as opposed to its effect on the operation of the school system as a whole." *National Education Ass'n of Shawnee Mission, Inc. v. Board of Education of Shawnee Mission Unified School District No. 512*, 212 Kan. 741, 753, 512 P.2d 426, 435 (1973), quoted with approval in *PLRB v. State College Area School District, supra* at 461 Pa. 506, 337 A.2d 262.

assigned to *each* worker and the type and degree of difficulty of those cases. While the terms "workload" and "caseload" have sometimes been used interchangeably, it is important to note that the Union's concern here is not with the absolute number of discrete cases assigned a given employee, but rather with the quantum of work required by a particular configuration of case assignments. The Union does not seek to control the *overall* workload administered by the Department of Public Welfare or the determination of what constitutes the work of the Department.

In *PLRB v. Mars Area School District, supra,* this Court recognized that matters affecting the employee's "quantum of work" are subjects of mandatory collective bargaining under section 701. That case held that the employer school district's unilateral termination of teacher-aides and substitution of volunteer workers was a violation of the district's duty to bargain in good faith over a subject of mandatory collective bargaining. In reaching this conclusion of law, Mr. Justice (now Chief Justice) Roberts, speaking for the Court, stated:

> The Board properly concluded that the [district's unilateral] decision's immediate impact on wages, hours, terms, and conditions of employment far outweighs any considerations of managerial policy. Appellee [school district] was therefore required to bargain under Section 701.

In *Dublin Professional Firefighters v. Community Services Dist.,* 45 Cal.App.3d 116, 119 Cal.Rptr. 182 (1st Dist.1975), the court, interpreting a similar statute, held that a public agency was obliged to bargain in good faith over assignment of overtime work to temporary employees rather than regular employees previously performing the same work. "The assignment of overtime work to temporary service personnel *will have an obvious effect on the workload and compensation* of the regular employees...." (emphasis added).

Similarly in the instant case, the "quantum of work" performed by an employee, i.e. the caseload or workload,

has an *obvious effect* on the employee's hours and rate of compensation. In its initial determination of August 6, 1979 upon remand from this Court, the Board adamantly espoused this conclusion of law (i.e., that caseload directly affected wages, hours and other terms or conditions of employment, and hence was bargainable under Section 701), stating:

Given that no two states are precisely alike in their systems of collective bargaining and scope of collective bargaining, *there is nonetheless a strong consensus that workload is mandatorily negotiable. Los Angeles Court Emp. Assn. v. County of Los Angeles,* 33 Cal. App.3d 1, 108 Cal.Rptr. 625 (1973) (social workers; caseload); *West Hartford Edu. Assn. v. DeCourcey,* 162 Conn. 566, 295 A.2d 526 (1972) (teacher workload); *Onodaga Community College Federation of Teachers,* 11 N.Y.Perb.Para 3045 (1978) (college professors' workload); *Annotation,* "Bargainable or Negotiable Issues in State Public Employment Labor Relations", 84 A.L.R.3d 242 (1978); Sackman, "Redefining the Scope of Bargaining in Public Employment", 17 *Boston College Law Review,* 155 (1977).

These judicial and administrative decisions recognize that unions exist, in a large part, to bargain about how much work their members are supposed to do. *Bargaining about mandatory subjects such as wages and hours would be meaningless if the employer could simply increase the amount of work to be done during a given period of time.*

Application of the *State College* balancing test to the facts of the present case leads this Board to conclude that workload is a mandatory subject of bargaining ....

.    .    .    .    . .

Although workload restrictions will affect, to some degree, the policy-making functions of the Commonwealth, the Supreme Court has ruled in *State College* that this alone will not render a particular subject non-mandatory under Section 702. The potential impacts the

Commonwealth has cited could also result from higher wages, shorter hours or changes in other admittedly mandatory subjects of collective bargaining. The Commonwealth has substantial freedom to determine what functions social workers will perform and what public services it will offer. Qualitative performance standards may be established and enforced through appropriate disciplinary procedures. Workload standards will have no impact on selection and direction of personnel or organizational structure. The overall budget, i.e. the establishment of the budget itself, will not be affected any more than a wage increase would affect it. Utilization of technology would not be prohibited although there might be some inhibitions on its introduction if too rigid a workload standard were adopted.

*The balance in this case is tipped rather strongly in favor of mandatory negotiability. The potential impacts of workload on the employes sharply outweigh those on the Commonwealth.* The Commonwealth's argument assumes that mandatory negotiation is equivalent to agreement. There is no obligation under Act 195 to agree. The Commonwealth need not agree to any workload restrictions it does not like. If a proposal is agreed to and it has, in practice, unduly adverse effects, then the parties can readjust the workload standards in subsequent negotiations. Collective bargaining is an ongoing process of adjustment and readjustment.

From Decision and Order of Board dated August 6, 1979 at 6–7, reproduced record at 289a–290a. (emphasis added).[3]

The majority's analysis and result resurrects a point of view that had been taken by the majority of the Commonwealth Court in *PLRB v. State College Area School District*, 9 Pa.Cmwlth. 229, 306 A.2d 404 (1973) which had been thoroughly rejected by this Court on appeal. The concern

**3.** On February 5, 1981, the Board reversed itself, with Board member Joseph J. Licastro dissenting, and reached the conclusion that caseload was not a subject of mandatory collective bargaining under section 701. The reasons offered for this change of heart are not persuasive, especially in light of the adamance of its prior opposite

expressed by Judge Kramer in his cogent dissenting opinion in that case is equally applicable today:

> [F]ollowing the reasoning of the majority, I believe it would be relatively easy for me to argue that almost everything touching upon teachers' employment could be argued to be a matter of "inherent managerial policy". If that is the result of the tack taken by the majority in analyzing what is meant by "inherent managerial policy", then I believe the legislative intent of Act 195 will have been thwarted.

Quoted with approval in the majority opinion on appeal, 461 Pa. 494, 504 n. 7, 337 A.2d 262, 267 n. 7.

For the foregoing reasons, I would hold, as a matter of law, that the Board erred in its determination that employee caseload is not a proper subject of mandatory collective bargaining under Section 701, and I would reinstate the Board's Nisi Decision and Order of August 6, 1979.

conclusion and since no additional evidence had been taken. While I agree with the majority that the Board has the *ability* to reverse itself, *see* section 1501, 43 P.S. § 1101.1501, nevertheless the Board's retreat from its strong position of August 6, 1979 seriously undermines the value of the Board's "expertise" on this issue and further demonstrates the impropriety of granting any deference to the Board's determination of conclusions of law.