## Demi v. Clearfield Area School District

*R. Denning Gearhart,* for plaintiffs.
*Michael P. Yeager,* for defendants.
*James A. Naddeo,* for Intervenor.

REILLY, *P.J.* September 29, 1983 — In July, 1980, the Board of School Directors of the Clearfield Area School District entered into a four year con-

tract with Dr. Daniel Freeman under the terms of which Dr. Freeman was to serve as the Superintendent of Schools for said district at a specified salary. This contract expires in July, 1984, and under the School Code the board is required to act on the matter during the last year of the agreement but not less than 150 days before the expiration date. Therefore, action must be had by February, 1984.

Of the present school board, six of the nine positions are up for election in the general election this year. Three of plaintiffs herein have won the nomination of both parties and one received the nomination of one party. None of plaintiffs are members of the present board. (See this court's memorandum dated September 28, 1983.) Regardless of the outcome of the election, the make-up of the board will change drastically.

On August 22, 1983, the present school board (defendant above named) voted by an 8-1 margin to extend Dr. Freeman's contract for three years, setting the salary for the first year thereof and letting the succeeding board set the salary thereafter.

Plaintiffs commenced the instant action in equity seeking to void the contract alleging that in acting on the contract the present school board prevented the incoming board from considering the issue and thereby abused its discretion.

Plaintiffs had previously brought an action to enjoin the present school board from considering the matter of the superintendent's contract. At that time, the court was of the opinion that it could not prevent the current board from bringing the subject up for discussion at a regular meeting. The issue of whether the current board had the right to take affirmative action on the contract in view of the facts of this case was not discussed or ruled upon.

This court agrees with plaintiffs and does herein

declare said contract voidable at the option of the incoming board.

Initially, two points must be made. First: the issue here is not whether the present board should have re-hired Dr. Freeman. Were that the issue, this court would have no authority to intervene, for it would merely be substituting its judgment for that of the board. The issue here is whether the present board should have acted on the contract at all — either to renew or not renew Dr. Freeman's contract or to hire an entirely new superintendent. Therefore, nothing in this memorandum shall adversely reflect on Dr. Freeman or his tenure as superintendent.

Second: this court is convinced that in acting on the contract of Dr. Freeman the members of the present board acted in what they perceived to be the best interests of the school district.

Our public school system is organized under and controlled by the Public School Code of 1949, Act 1949, March 10, P.L. 30, as amended, 24 P.S. §1-101 et seq. (School Code).

Section 10-1073 of the School Code provides in relevant part:

"(a) The board of school directors of each school district, except in school districts of the first class, shall meet at its regular place of meeting, during the last year of the term of the district superintendent or at any other time when a vacancy shall occur in the office of district superintendent, at an hour previously fixed by the board. The secretary of each board of school directors shall mail to each member thereof at least five days beforehand, a notice of the time, place and purpose of such meeting. At such meeting the board shall elect or approve a properly qualified district superintendent to serve a term of from three to five years from the first day of July

next following his election or from a time mutually agreed upon by the duly elected district superintendent and the board of school directors.

(b) At a regular meeting of the board of school directors occurring at least one hundred fifty (150) days prior to the expiration date of the term of office of the district superintendent, the agenda shall include an item requiring affirmative action by five or more members of the board of school directors to notify the district superintendent that the board intends to retain him for a further term of from three (3) to five (5) years or that another or other candidates will be considered for the office. In the event that the board fails to take such action at a regular meeting of the board of school directors occurring at least one hundred fifty (150) days prior to the expiration date of the term of office of the district superintendent, he shall continue in office for a further term of similar length to that which he is serving."

While the statute provides that the school board is to consider and take affirmative action upon the matter of the district superintendent's contract during the last year of his term, it is silent with regard to the situation in which two school boards, one being elected by the public to succeed the other, would both be technically authorized to act under a literal reading of the statute. Though both boards would have the ability to act, only one school board's action could be binding on the district. This raises a question as to which board has the superior right to act in such a situation. The issue must be resolved through statutory interpretation and the application of equitable principles.

The Statutory Construction Act of 1972* provides

---

* Act of December 6, 1972, P.L. 1339, No. 290, 1 Pa. C.S.A. §§1501-1991 (supp. pamphlet 1983-84).

several guidelines to be used in interpreting a statute. First, the object of all statutory interpretation and construction is "to ascertain and effectuate the intention of the General Assembly," while giving effect, if possible, to all of the statute's provisions. 1 Pa.C.S.A. §1921(a). Bell v. Thornburgh, 491 Pa. 263, 420 A.2d 443 (1980). Section 1921(b) provides that "(w)hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." When applied to the situation where two school boards, one having been elected to succeed the other, would both be authorized to act on the district superintendent's contract under a literal reading of section 10-1073, that section of the School Code is certainly not "clear and free from all ambiguity."

Section 1921(c) of the Statutory Construction Act provides:

"When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislature history.

(8) Legislative and administrative interpretations of such statute."

Further, section 1922 sets out certain presumptions which may be used in ascertaining legislative intent in the enactment of a statute. Among them are the following:

"(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

. . . .

(5) That the General Assembly intends to favor the public interest as against any private interest."

Applying these principles to the situation presented in the instant case, we find that the legislature did not intend section 10-1073 to allow an outgoing school board to bind the succeeding board to the renewal of a district superintendent's contract where such renewal would not take effect until well after a new school board has taken office, where the new board would have sufficient time to act on the matter. Defendants' interpretation of the statute would lead to the unreasonable result that an outgoing school board could usurp the power of the succeeding board to decide whether or not to renew the superintendent's contract.

The School Code was enacted for the purpose of establishing "a thorough and efficient system of public education." Philadelphia Federation of Teachers, Local No. 3, AFT, AFL-CIO v. Board of Ed. of School Dist. of Philadelphia, 51 Pa. Commw. 296, 300, 414 A.2d 424, 426 (1980). And a school district is an agency of the State Legislature, created by law for the purpose of promoting education. State College Education Association v. Pennsylvania Labor Relations Board, 9 Pa. Commw. 229, 306 A.2d 404 (1973). Regarding the operation of school districts, the Commonwealth Court has held that

"school boards have traditionally been given by the Legislature, under constitutional mandates, broad inherent managerial powers to operate the

public schools and to determine policy relative thereto." Id. at 240, 306 A.2d at 410.

The goal of the legislature is best realized, of course, through effective administration of the education system on all levels. At the local level, this requires not only a school board that is responsive to the needs of the community in providing a program of public education, but administrators who are responsive to the school board, as the board must depend upon them for guidance as well as for effective implementation of the board's policies. Clearly, a school board is better able to fulfill the educational needs of the community from which it was elected when there is a high degree of compatibility and cooperation between the board and its admnistrators.

As the Supreme Court stated in Mitchell v. Chester Housing Authority, 389 Pa. 314, 328, 132 A. 2d 873, 880 (1957),

"(g)ood administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to those ·charged with the policy-making function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. This chain of responsibility is the basic check on government possessed by the public at large. A contract which will have the effect of, and indeed appears to have been executed with the express purpose of, violating this rule runs counter to public policy and will not be enforced against the public interest."

The district superintendent is the person most responsible for implementing the policies of a school board. It is desirable, then, for the school board to be able to select the district superintendent who will be serving that board. This is not always possible, how-

ever, because the superintendent's contract will not always expire near the beginning of, or at any time during, a particular school board's term of office, since the membership of the board may change as often as every two years, while a superintendent's term of employment is from three to fiver years under the School Code. But where, as here, a district superintendent's contract will not expire until some seven months after a new school board has taken office, and where most of the unchallenged candidates for election to the board campaigned on a promise to give serious and thorough consideration to the matter of renewing the superintendent's contract (see Defendant's Exhibits A, B, C & D attached to the Motion for Summary Judgment), and where the new board will have two months to act on the matter before the statutory deadline of 150 days prior to expiration of the contract, equity and the public interest, as well as common sense, demand that final action on the matter be reserved to the new school board rather than the preceding board, which would in no way be affected by the decision. Under the circumstances, we can conclude only that the current school board acted with the purpose of precluding the incoming board from rightfully exercising its power under the statute and that such action was an abuse of authority on the part of the current board and cannot be binding on the succeeding board.

It appears that section 10-1073 of the School Code was enacted to prevent the frequent disruptions in the education process and in the lives of superintendents that could arise if the superintendent were an employee at will rather than one who works under contract. Since district superintendents play such an important role in the administration of the education system, it is imperative that there be

some stability in the system with regard to their employment. By enacting section 10-1073 and related sections of the School Code, the legislature has supplied that stability by providing that the superintendent is to be informed at least 150 days before his contract is due to expire whether his contract will be renewed or the school board will consider other candidates for the position, and by providing that the superintendent is to serve a term of from three to five years, subject to dismissal only under certain circumstances.

Though the statute allows a school board's selection of a district superintendent to be binding upon a subsequent board where the term of the contract overlaps a change in the school board's membership resulting from elections, it was not designed or intended to permit a school board to usurp the rightful authority of another to select a superintendent.

The statute allows a school board to enter into a binding contract to employ a superintendent for a term of up to five years even though the school board's makeup may change in as little as two years. But the question here is not whether a school board may bind a succeeding board to a valid contract of employment that continues beyond the contracting board's term of office. It is axiomatic that it may do so. Horvat v. Jenkins Township School District, 337 Pa. 193, 10 A.2d 390 (1940); Scott v. Philadelphia Parking Authority, 402 Pa. 151, 166 A.2d 278 (1960). Rather, the question with which we are concerned is whether an outgoing board can bind a succeeding board to a contract that is not scheduled to take effect until some seven months after the succeeding board has taken office where the succeeding board would have the statutory authority to so contract. This it clearly cannot do. Though the current board was apparently given the authority to re-

new the superintendent's contract under a literal reading of the statute, any such right that it may have had must give way to the succeeding board's superior right to so act, as discussed above. This application of the statute is clearly consistent with the legislature's goal in enacting the School Code to provide a thorough and efficient system of public education.

Moreover, even assuming that the outgoing school board did have the right to take action regarding the superintendent's contract, the court nevertheless must conclude that the board abused its discretion in doing so in this case.

It is well-established that courts will not intervene in discretionary acts of school boards when the school board is acting in good faith and within the scope of its statutory authority. Mid Valley Taxpayers Association et al. v. Mid Valley School District et al., 52 Pa. Commw. 402, 416 A.2d 590 (1980). As the Commonwealth Court stated in that case,

"Courts will not review the actions of governmental bodies . . . involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power. . . .

Before a court will restrain a school board from performing certain acts, a plaintiff must sustain a heavy burden of proving bad faith, arbitrariness or abuse of discretion on the part of the board.

. . . (T)he law will regard a school board's actions as an abuse of power when there is no room for difference of opinion and when the facts admit of no other conclusion than that the Board has been influenced by consideration other than the public interests, no matter what these may have been." *Id.* at 410-411, 416 A.2d at 593-94, (citations omitted).

In the case at bar, plaintiffs campaigned for election to the school board on a promise to thoroughly

review the matter of renewal of the superintendent's contract. Three of them were nominated on both tickets, and the remaining plaintiff was nominated on one ticket. Before acting on the superintendent's contract, the school board was aware of the fact that plaintiffs, as well as one current board member, were strongly opposed to the board taking any action on the contract. In fact, plaintiffs had filed suit to have the board enjoined from acting. Furthermore, we view the primary election results as an indication of public opposition to any action on the superintendent's contract until the incoming board members have taken office. It must be noted that the superintendent's contract will not expire until July, 1984, some seven months after succeeding board members have taken office, and that, therefore, the current board was under no obligation to act on the matter because the succeeding board would have sufficient time to do so under the statute. As noted previously, if the action taken by the outgoing board is binding, the succeeding board will be precluded from exercising its right to act on the contract. This was apparently a motivating force behind the board's decision to act on the matter.

Under these circumstances, we can only conclude that the school board's decision to take action on the superintendent's contract was, in fact, not in the public interest, but was an abuse of power.

On the basis of the foregoing discussion, plaintiff's motion for summary judgment is granted.

Accordingly, the court enters the following

## DECREE NISI

Now, November 3, 1983, following hearing into the above-captioned matter, it is the order of this court that plaintiffs' motion for summary judgment be and is hereby granted. The contract entered into

by the present Board of School Directors of the Clearfield Area School District with Dr. Daniel M. Freeman, District Superintendent, on August 22, 1983, and scheduled to take effect on July 1, 1984, is declared voidable at the option of the Board of School Directors which shall take office on December 5, 1983; and further, that said board shall act on the matter of said contract on or before February 1, 1984, in accordance with the provisions of the public School Code. Exceptions to this decree shall be filed within ten days from date hereof failing which said Decree shall become final.